UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOYD J. DANIEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2933** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION: "G" (5)** |

## ORDER AND REASONS

Before the Court is the Motion to Stop Respondents Southern Region Personnel from Implementation of Termination Effective 12/31/12,[1] which was filed on December 19, 2012 by *pro se* petitioner, Lloyd J. Daniel ("Petitioner"). Therein, Petitioner seeks to enjoin the defendant, Allstate Insurance Company, from terminating the Allstate RC0011C Exclusive Agency Agreement (the "Agreement") on December 31, 2012. Having considered the expedited motion, the representations made in a status conference with the parties on December 28, 2012,[2] the record, and the applicable law, the Motion to Stop Respondents Southern Region Personnel from Implementation of Termination Effective 12/31/12 will be denied.

## I.  Background

*A. Factual Background*

Lloyd Daniel ("Petitioner"), a resident of Metairie, Louisiana sells insurance pursuant to an Allstate RC001C Exclusive Agency Agreement (the "Agreement") with Allstate Insurance Company ("Allstate"), a corporation "addressed" in Northbrook, Illinois.[3] On February 15,

---

[1] Rec. Doc. 5.

[2] Rec. Doc. 9.

[3] Rec. Doc. 1 at p. 1.

1

2011, Bob Duhe ("Duhe"), the Territory Sales Leader, sent a letter to Petitioner noting that Petitioner's agency had failed to meet certain business objectives and offering Petitioner assistance from field sales leadership to obtain those objectives.[4] Duhe sent a second letter to Petitioner on September 19, 2011 to "follow up on prior conversations regarding the business results of [Petitioner's] agency," and noting that "[f]ailure to meet the objectives could jeopardize [Petitioner's] agency's continued relationship with Allstate."[5]  However, Petitioner allegedly did not receive the February 15, 2011 or September 19, 2011 letters until April 2, 2012.[6]

Petitioner received a letter dated March 21, 2012, notifying Petitioner that Allstate would be terminating the Agreement, effective June 30, 2012, pursuant to Section XVII.B.2 of the Agreement.[7]  Section XVII.B.2 of the Agreement provides that the Agreement may be terminated "[b]y either party, with or without cause, upon providing (90) days prior written notice to the other."[8]  On March 25, 2012, Petitioner responded to the March 21, 2012 termination letter requesting specific information regarding the termination and professional independent sources to assist him in evaluating the economic interest in Petitioner's book of business.[9]

Duhe responded to Petitioner's request on March 29, 2012, providing a copy of the Agreement with the sections highlighted pertaining to termination and copies of the February 15,

---

[4] Rec. Doc. 1-2 at p. 3.

[5] *Id.* at p. 4.

[6] Rec. Doc. 1-2 at pp. 28-29 (noting that letters attached to March 29, 2012 letter from Duhe were received on April 2, 2012).

[7] Rec. Doc. 1-3 at p. 12.

[8] Rec. Doc. 1-2 at p. 1.

[9] *Id.* at pp. 12-13.

2011 and September 19, 2011 notices regarding the requirement to meet certain business objectives.[10] On March 31, 2012, presumably while the March 29, 2012 letter was in transit, Petitioner wrote a letter to Duhe requesting additional time to evaluate the value of Petitioner's book of business.[11] Petitioner responded to Duhe's March 29, 2012 letter on April 3, 2012, noting that he had not received the February 15, 2011 or September 19, 2011 letters regarding his failure to meet business objectives until April 2, 2012, when they arrived as attachments to Duhe's letter.[12]

On April 30, 2012, Petitioner received a letter from Duhe indicating that Allstate had verified that the "first written notification…was sent to [Petitioner] on February 17, 2011," but that Petitioner may not have received the second written notice.[13] Therefore, the correspondence stated that the "original termination letter delivered…on or about March 21, 2012 [was] being temporarily rescinded."[14] Enclosed within the April 30, 2012 letter was another notice of expected results, also dated April 30, 2012, from Matt Phillips, the Regional Sales Leader, notifying Petitioner of Allstate's "expectations for [Petitioner's] agency for the next 90 days."[15] Petitioner responded to the April 30, 2012 correspondences, stating that he was implementing processes to obtain company business objectives.[16]

---

[10] *Id.* at p. 19; Rec. Doc. 1-3 at pp. 20-24.

[11] Rec. Doc. 1-2 at p. 21.

[12] *Id.* at pp. 28-29.

[13] Rec. Doc. 1-3 at p. 13.

[14] *Id.*

[15] *Id.* at p. 14.

[16] *Id.* at pp. 9-11.

On July 20, 2012, Petitioner wrote a letter to Matt Phillips expressing his concerns regarding the attempted termination after a meeting with Duhe and another Allstate employee. Petitioner voiced his belief that there was no procedure in the Agreement for a termination to be temporarily rescinded and extended, and the March 21, 2012 termination was therefore a wrongful termination.[17] Although Petitioner claims he requested additional information and specific provisions from Matt Phillips, a response was never forthcoming.

On September 10, 2012, Petitioner received a second termination of agency notice that will be effective December 31, 2012.[18] Petitioner responded to the termination letter on November 15, 2012 stating his basis for believing that the March 21, 2012 and September 10, 2012 terminations are wrongful:

> "If the 9/10/2012 termination letter is an exten[s]ion of the Re[s]cind and extend termination of 3/21/12, it is a wrongful termination in that they are no provisions or procedures in the…Agreement which provide[] for a re[s]cind and extend termination process. The 3/21/12 termination was a wrongful termination in that all of the required letters were not received."[19]

*B. Procedural Background*

Petitioner, a resident of Metairie, Louisiana, filed a Motion for Injunctive Relief Wrongful Termination of Agency Agreement in this Court on December 10, 2012 against Allstate, a company incorporated in and having its principal place of business in Illinois.[20] Petitioner invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The case was initially assigned to Judge Jane Triche Milazzo, Section "H," but was re-allotted to Section

---

[17] *Id.* at pp. 15-18.

[18] Rec. Doc. 1 at p. 2.

[19] Rec. Doc. 1-2 at p. 6.

[20] *Id.* at p. 1; Rec. Doc. 9.

"G" of this Court after Judge Milazzo disqualified herself from acting on the case "[p]ursuant to Canon 3-C(1) of the Code of Judicial Conduct."[21]  Petitioner requests that the Court enjoin Allstate from terminating the Agreement, because it would amount to a wrongful termination that would result in a 95 percent loss of agency revenue,[22] which would be in excess of $75,000.[23]

On December 19, 2012, Petitioner filed a Motion to Stop Respondents Southern Region Personnel from Implementation of Termination Effective 12/31/12[24] and Motion to Expedite Hearing.[25]  The Court granted the Motion to Expedite Hearing on December 27, 2012.[26]  On December 28, 2012, the Court participated in a conference call with Petitioner and counsel for Allstate.[27]

## II.  The Parties' Arguments

Petitioner asserts that the March 21, 2012 termination letter was a wrongful termination, because all of the "required letters were not received."[28]  Petitioner argues that after Allstate rescinded its initial termination, subsequent terminations were an extension of that first notice,

---

[21] Rec. Doc. 4.

[22] Rec. Doc. 1 at p. 3.

[23] Rec. Doc. 9.

[24] Rec. Doc. 5.

[25] Rec. Doc. 6.

[26] Rec. Doc. 8.

[27] Rec. Doc. 9.

[28] *See* Rec. Doc. 1 & 9; Rec. Doc. 1-2 at p. 6.

and there is no mechanism in the Agreement for extensions of terminations.[29] Therefore, Petitioner argues that the September 10, 2012 termination letter, effective December 31, 2012, is invalid and wrongful.[30] Petitioner argues that he will lose 95% of his agency's revenue if the Court does not enjoin the termination of the Agreement on December 31, 2012.[31]

Allstate maintains that Petitioner executed the Agreement in January of 2000, and the Agreement expressly provides that Petitioner may be terminated with or without cause.[32] Allstate contends that after giving the first notice of termination, Petitioner claimed he did not receive the letters; in response, Allstate gave Petitioner the benefit of the doubt and afforded him time to rectify Allstate's concern about Plaintiff's ability to meet its business objectives. Allstate further argues that the September 10, 2012 termination letter complies with the Agreement and provided Petitioner with the requisite notice.[33] Allstate reasons that the earlier termination of March 21, 2012 does not impact the efficacy of the September 10, 2012 termination letter.[34] Allstate also asserts that it will suffer irreparable injury if it is forced to continue to conduct business with Petitioner under the Agreement, despite having already made a determination that Petitioner is not adequately performing.[35]

---

[29] Rec. Doc. 9.

[30] *Id.*; Rec. Doc. 9.

[31] Rec. Doc. 1 at p. 3.

[32] Rec. Doc. 9.

[33] *Id.*

[34] *Id.*

[35] *Id.*

## III. Law & Analysis

*A. Standard Applicable to Pro Se Filings*

The plaintiff here is proceeding without benefit of counsel, and therefore is *pro se*. The Fifth Circuit has held that "[w]e give *pro se* briefs a liberal construction."[36] However, this liberal construction given to a *pro se* brief is the only special treatment afforded *pro se* plaintiffs by the court.[37] *Pro se* plaintiffs are otherwise required to know their legal rights and abide by all applicable procedural rules,[38] and a *pro se* plaintiff's ignorance of or unfamiliarity with court proceedings does not relieve him of this duty.[39]

Petitioner filed a Motion to Stop Respondents Southern Region Personnel from Implementation of Termination Effective 12/31/12[40] on December 19, 2012, along with a Motion to Expedite Hearing.[41] Liberally construing Petitioner's Motion to Stop Respondents Southern Region Personnel from Implementation of Termination Effective 12/31/12, he is requesting that the Court enjoin Allstate from terminating the Agreement on December 31, 2012. Allstate has not answered the original complaint and there is no time to fully develop the legal and factual issues involved in this matter before the December 31, 2012 termination date. Accordingly, the Court will construe the Motion to Stop Respondents Southern Region

---

[36] *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (citing *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).

[37] *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 809 (S.D. Miss. 2006) (citing *Callahan v. C.IR.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).

[38] *Id.* (citing *Boswell v. Gov. of Texas*, 138 F.Supp.2d 782, 785 (N.D. Tex. 2000)).

[39] *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

[40] Rec. Doc. 5.

[41] Rec. Doc. 6.

Personnel from Implementation of Termination Effective 12/31/12 and the Motion to Expedite Hearing jointly, as a motion for a temporary restraining order.

## B. *Diversity Jurisdiction*

District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different states."[42] Petitioner states that jurisdiction is proper here on the basis of diversity because he is a resident of Metairie, Louisiana and Allstate's address is in Northbrook, Illinois. The citizenship of a corporation is the place of incorporation and the place of its principal place of business.[43] Having confirmed that Allstate's principal place of business and place of incorporation are in Illinois,[44] the Court finds that diversity of citizenship exists.

The United States Supreme Court has held that in diversity actions in which "declaratory or injunctive relief is sought, the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right which the plaintiff seeks to enforce or protect or the value of the object which is the subject matter of the suit."[45] Petitioner states that if the Agreement is terminated it would result in a loss of 95% of his agency revenue.[46] Petitioner stated in a telephone conference that 95% of Petitioner's agency revenue would exceed $75,000.[47] Counsel for Allstate did not dispute Petitioner's representation to the Court.

---

[42] 28 U.S.C. § 1332(a).

[43] *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 637 (5th Cir. 1983) (quoting 28 U.S.C. § 1332).

[44] Rec. Doc. 9.

[45] *Hunt v. Washington State Apple Adv. Comm'n*, 432 U.S. 333, 347 (1977).

[46] Rec. Doc. 1 at p. 3.

[47] Rec. Doc. 9.

Therefore, the Court finds that based on the information presented at this time, the jurisdictional amount has been satisfied, and that this Court has jurisdiction over Petitioner's request for injunctive relief.

## C. Standard for a Temporary Restraining Order

Federal procedural law determines the standard for issuing a preliminary injunction or temporary restraining order ("TRO"), even if state law is to be applied in determining whether the state law cause of action can support an injunction.[48] Federal Rule of Civil Procedure Rule 65 governs injunctions and restraining orders, and Rule 65(b) sets forth the procedural rules governing the issuance of restraining orders.

A party requesting a TRO must "clearly show" four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not adversely affect the public interest.[49] Because such relief is an extraordinary remedy, to justify entry of a TRO or preliminary injunction, the petitioner must "clearly carr[y] the burden of persuasion on all four elements."[50]

The first of these elements requires Petitioner to clearly demonstrate a substantial likelihood of success on the merits. The Court does not find, at this time, that Petitioner has a substantial likelihood of success on the merits of his claim for wrongful termination. The letter

---

[48] *See S. Milk Sales, Inc. v. Martin*, 924 F.2d 98 (6th Cir. 1991); *Capital Tool & Mfg. v. Machinefabrik Herkules*, 837 F.2d 171, 173 (4th Cir. 1988); *Sys. Operations v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1141 (3rd Cir. 1977); *Viad Corp v. Cordial*, 299 F. Supp. 2d 466 (D.C. Pa. 2003); *Uncle B's Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405 (D.C. Iowa 1996).

[49] *RW Development, LLC v. Cunningham Grp. Architecture, Inc.*, No. 12-00224, 2012 WL 3258782, at *2 (S.D. Miss. Aug. 8, 2012).

[50] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). *See also Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 332 (5th Cir. Unit B Nov. 1981).

from Duhe, Allstate's Territorial Sales Leader, dated September 10, 2012, merely states that the termination is pursuant to Section XVII.B.2 of the Agreement, which provides that the Agreement may be terminated "[b]y either party, with or without cause, upon providing (90) days prior written notice to the other." The termination will become effective on December 31, 2012 if a TRO is not issued. Therefore, even if no cause were present to terminate the Agreement, Allstate has provided Petitioner 112 days' notice from the latest termination letter. Petitioner's argument that the March 21, 2012 "wrongful termination" was rescinded and extended to the September 10, 2012 termination letter is unavailing, because the termination letter dated September 10, 2012 complies with the procedures set forth for termination by the Agreement.

Having found that the Petitioner has not clearly demonstrated a substantial likelihood of success on the merits, the Court does not need to examine the remaining three elements, because Petitioner fails to carry the burden of persuasion on the first element, which prevents the entry of a temporary restraining order. Moreover, all parties agreed to a March 15, 2013 date for the Court to hold a hearing on a preliminary injunction, and Petitioner expressed no concern that irreparable harm would occur before then.

## V. Conclusion

For the reasons set forth above, the Court does not find the entry of a TRO to be justified in these circumstances. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion to Stop Respondents Southern Region Personnel from Implementation of Termination Effective 12/31/12[51] is **DENIED.**

---

[51] Rec. Doc. 5.

**IT IS FURTHER ORDERED** that a hearing on a preliminary injunction will be held on **March 15, 2013 at 10:00 a.m.**

**IT IS FURTHER ORDERED** that the parties are to file into the record any supporting memoranda, affidavits in support, and any witness lists or exhibits to be used at least ten (10) working days before the hearing.

**NEW ORLEANS, LOUISIANA**, this  31st  day of December, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**